**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LLADRO GALLERIES, INC., | Case No. 20-11618 |
| Debtor. | (Subchapter V) |

**PLAN OF REORGANIZATION OF**
**LLADRO GALLERIES, INC.**

Peter J. Haley (*pro hac vice pending*)
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
Boston, Massachusetts 02109
Phone: (617) 217-4714
Fax: (617) 217-4750
peter.haley@nelsonmullins.com

INTRODUCTION

Lladro Galleries, Inc. ("Company" or the "Debtor") proposes this plan of reorganization (the "Plan").

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.**     **Scope of Definitions; Rules of Construction**

Except as expressly provided or unless the context otherwise requires, capitalized terms not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number.

**B.**     **Definitions**

1.1. "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or section 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses of preserving the Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered, and (b) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code.

1.2. "Administrative Claim Bar Date" means the date that is thirty-five (35) days after the Effective Date and by which any requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order.

1.3. "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4. "Allowed" means the applicable Claim, Interest, Warrant, or any portion thereof that is specifically allowed in or under the terms of this Plan.

1.5. "Assumed Agreement" means an Executory Contract or Unexpired Lease which has been assumed or deemed assumed by the Debtor.

1.6. "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended.

1.7. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or any other court with jurisdiction over the Subchapter V Case.

1.8. "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein.

1.9. "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

1.10. "Cash" means legal tender of the United States of America.

1.11. "Cause of Action" means any action, proceeding, agreement, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment, and any claim on a contract or for a breach of duty imposed by law or in equity; (b) the right to object to Claims, Interests, or Warrants; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.12. "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

1.13. "Class" means one of the classes of Claims, Interests, or Warrants listed in Article III of the "Plan."

1.14. "Collateral" means any property or interest in property of the Debtor's Estate that is subject to a Lien to secure the payment or performance of a Claim.

1.15. "Common Stock" means shares of common stock of the Debtor that are authorized, issued, and outstanding prior to the Effective Date.

1.16. "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order subject to all conditions specified in Article XIII.A having been satisfied.

1.17. "Confirmation Date" means the date of entry by the Bankruptcy Court of the Confirmation Order on its docket, within the meanings of Bankruptcy Rules 5003 and 9021.

1.18. "Confirmation Hearing" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.19. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1191 of the Bankruptcy Code.

1.20. "Debtor" means Lladro Galleries, Inc.

1.21. "Effective Date" means the first Business Day on which all conditions to the Plan's confirmation in Article XIII.B of the Plan have been satisfied.

1.22. "Estate" means the estate of the Debtor in the Subchapter V Case, as created under section 541 of the Bankruptcy Code.

1.23. "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.24. "Final Order" means an order or judgment, entered by a court of competent jurisdiction, that has not been amended, modified, or reversed, and as to which no stay is in effect.

1.25. "General Unsecured Claim" means a Claim that is not an Administrative Claim, Secured Claim or Priority Tax Claim.

1.26. "Impaired" refers to being impaired within the meaning of section 1124 of the Bankruptcy Code.

1.27. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.28. "Net Sale Proceeds" shall mean those funds received from the sale of the Debtor's Inventory less any allowed Administrative Expenses.

1.29. "Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

1.30. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.31. "Petition Date" means the date on which the Debtor filed its petition for relief commencing the Subchapter V Case.

1.32. "Plan" has the meaning set forth in the Introduction.

1.33. "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.34. "Pro rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims in that Class, unless the Plan provides otherwise.

1.35. "Record Date" means the date on which the solicitation of votes on the Plan is commenced.

1.36. "Reorganized Debtor" means the Debtor from and after the Effective Date.

1.37. "Reinstated" or "Reinstatement" means, with respect to the treatment of a Claim under this Plan, that the Claim will not be impaired, as that term is used in section 1124 of the Bankruptcy Code.

1.38. "Secured Claim" means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.39. "Subchapter V Case" means the Subchapter V case of the Debtor.

1.40. "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.41. "Unimpaired" means any Claim, Interest, or Warrant that is not designated as Impaired.

**C.      Rules of Interpretation**

(i)      General

In this Plan (a) any reference to a contract, instrument, release, or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions, (b) any reference to an existing document or exhibit means that document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

(ii)     "Including"

As used in this Plan, "including" means "including without limitation."

(iii)    "On"

With reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

**D.      Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

<h1 style="text-align:center">ARTICLE II<br>BACKGROUND OF THE CASE</h1>

Lladro, S.A. is a Spanish company that was formed by three brothers in 1953. The company is an international leader in the design, manufacturing and distribution of porcelain figurines and fixtures. The Debtor, Lladro Galleries, Inc. is a New York corporation, 60% of which is owned directly by Lladro, S.A., and 40 % of which is owned by Tesorval, S.A., a wholly owned subsidiary of Lladro, S.A.. The Debtor operates four retail locations in the United States that sell Lladro product.

The Debtor relies upon Lladro, S.A. to provide product. The Debtor has four retail locations: Cabazo, California; New York, New York; Williamsburg, Virginia; and Woodbury, New York. The Debtor is a tenant at each location.

Over the past three years the Debtor has had aggregate revenues of $2.8 million (2018), $2.1 million (2019) and $400,000 (through May 31, 2020). The Debtor has operated at a loss in each year and has outstanding obligations to Lladro, S.A. of approximately $2.9 million for unpaid inventory.

<h1 style="text-align:center">ARTICLE III<br>LIQUIDATION ANALYSIS</h1>

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

The Debtor has substantial assets at book value consist primarily of inventory and store fixtures. The Debtor does not believe that the inventory at liquidation will yield more than $60,000 and does not believe that its investments in store build out and fixtures will yield any appreciable value.

# ARTICLE IV
# ABILITY TO MAKE PLAN PAYMENTS

The Debtor intends to implement the Plan by selling all assets that will yield any material value beyond the cost of the sale and distributing those assets to its non-affiliate unsecured creditors on pro rata basis. The source of payment will be the sale proceeds and will not be dependent on any future operations.

# ARTICLE V
# SUMMARY OF THE PLAN

The Plan proposes to pay creditors as follows:

| | |
|---|---|
| Priority Claims | Paid in Full |
| Secured Creditors | [No secured debt] |
| Unsecured Creditors – Non-Affiliates | Estimated Return 10% |
| Unsecured Creditors – Affiliates | No return |
| Equity Holders | No return |

# ARTICLE VI
# CLASSIFICATION OF CLAIMS AND INTERESTS

**A.     Introduction**

The Plan places all Claims, Interests, and Warrants except unclassified Claims provided for in Article II, in the Classes listed below. A Claim, Interest, or Warrant is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in other Classes to the extent that any portion thereof falls within the description of other Classes.

**B.     Summary and Treatment of Classes**

(i)     Class 1:     Secured Claims.

(ii)    Class 2:     Non-Affiliate Unsecured Claims

(iii)   Class 3:     Affiliate Unsecured Claims

(iv)    Class 4:     All Equity Interests

# ARTICLE VII
# TREATMENT OF UNCLASSIFIED CLAIMS

Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

## A. Administrative Claims

The rights of each holder of an Administrative Claim shall be reinstated under, and shall not be Impaired by, the Plan. Each holder of an Administrative Claim shall receive Cash equal to the unpaid portion of its Administrative Claim on the date on which its Administrative Claim becomes payable under applicable law or any agreement relating thereto.

Any requests for payment of Administrative Claims must be filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order no later than the Administrative Claims Bar Date. Holders of such Administrative Claims that do not file and serve a request for payment of Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, the Reorganized Debtor, the Estate, or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Any objections to requests for payment of such Administrative Claims must be filed and served on the requesting party within thirty-five (35) days after the Administrative Claims Bar Date. Any such objections that are not consensually resolved may be set for hearing on twenty-one (21) days' notice of such hearing to the Reorganized Debtor.

## B. Priority Tax Claims

The rights of each holder of a Priority Tax Claim shall be Reinstated under, and shall not be Impaired by, the Plan. Each holder of a Priority Tax Claim shall receive Cash equal to the unpaid portion of its Priority Tax Claim on the date on which its Priority Tax Claim becomes payable under applicable law or any agreement relating thereto.

# ARTICLE VIII
# TREATMENT OF CLAIMS, INTERESTS, AND WARRANTS

## A. Introduction

(i) Class 1: Secured Claims

1. <u>Impairment and Voting</u>. Class 1 is not Impaired by the Plan. Each holder of a Secured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

2. <u>Distribution</u>. On the Effective Date, each holder of an Allowed Secured Claim shall have its claim Reinstated, and shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Claim, (a) treatment that

leaves unaltered the legal, equitable, and contractual rights to which such Allowed Secured Claim entitles the holder of such Claim, or (b) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

  (ii) Class 2: Non-Affiliate Unsecured Claims.

   1. <u>Impairment and Voting</u>. Class 2 is Impaired by the Plan. Each holder of an Allowed Unsecured Claim held by a person or entity that is not affiliated with the Debtor is entitled to vote to accept or reject the Plan.

   2. <u>Distribution</u>. On the Effective Date, the holders of Allowed Class 2 Claims shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Unsecured Claim, their pro rata share of the Net Sale Proceeds and the Liquidation Dividend.

  (iii) Class 3: Affiliate Unsecured Claims

   1. <u>Impairment and Voting</u>. Class 3 is Impaired by the Plan. For purposes of voting on the Plan, Class 3 has been deemed to reject the Plan and the Debtor will not solicit votes on the Plan from the holders of Class 3 Claims.

   2. <u>Distribution</u>. On the Effective Date, the unsecured claims held by Lladro, S.A. or any other affiliate of the Debtor will receive no distribution.

  (iv) Class 4: All Equity Interests

   1. <u>Impairment and Voting</u>. Class 4 is Impaired by the Plan. For purposes of voting on the Plan, Class 4 has been deemed to reject the Plan and the Debtor will not solicit votes on the Plan from the holders of Class 4 Claims.

   2. <u>Distribution</u>. On the Closing Date, all Common Stock Interests will be cancelled. No distribution will be made to any Class 4 member.

**B.** **Alternative Treatment**

Notwithstanding any provision herein to the contrary, consistent with section 1123(a)(4) of the Bankruptcy Code, any holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Debtor may agree in writing.

**ARTICLE IX**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.** **Net Sale Proceeds**

The Debtor will disburse the Net Sale Proceeds on the Effective Date.

B.  **Cancellation of Securities**

On and after the Effective Date, except to the extent otherwise provided herein, all indentures, notes, bonds, instruments, guarantees, certificates, agreements (including registration rights agreements), and other documents evidencing the existing preferred common, and/or other stock of the Debtor, including but not limited to Warrants, will be cancelled, and any obligations of the Debtor thereunder or in any way related thereto shall be fully satisfied, released, and discharged.

C.  **Preservation of Rights of Action**

Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person or entity. The Reorganized Debtor or its successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s) who hold such rights. Notwithstanding the foregoing, the Debtor hereby releases any claims, causes of action, or rights arising under sections 510(c), 544, 545, 547, 548, 549, 550, and 551 of the Bankruptcy Code.

D.  **Exemption from Certain Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers or mortgages from or by the Debtor to the Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS

A.  **Delivery of Distributions; Undeliverable or Unclaimed Distributions**

(i)  Delivery of Distributions in General

The Reorganized Debtor shall make distributions to each holder of an Allowed Claim and an Allowed Interest at the address for each such holder reflected in the books and

records of the Debtor. Distributions under the Plan shall be made only to the holders of Allowed Claims and Allowed Interests as of the Record Date.

    (ii)    Undeliverable and Unclaimed Distributions

        1.    Holding of Undeliverable and Unclaimed Distributions

If any holder's distribution is returned as undeliverable, no further distributions to that holder shall be made unless and until the Reorganized Debtor receives notice of the holder's then-current address, at which time all outstanding distributions shall be made to the holder. Undeliverable distributions made through the Reorganized Debtor shall be returned to the Reorganized Debtor until such distributions are claimed. The Reorganized Debtor shall establish a segregated account to serve as the unclaimed distribution reserve, and all undeliverable and unclaimed distributions shall be deposited therein for the benefit of all similarly situated Persons until such time as a distribution becomes deliverable, is claimed, or is forfeited under the terms of the Plan.

        2.    Failure to Claim Undeliverable Distributions

Any undeliverable or unclaimed distribution under this Plan that does not become deliverable on or before the second anniversary of the Effective Date shall be deemed to have been forfeited and waived, and the Person otherwise entitled thereto shall be forever barred and enjoined from asserting its Claim therefor against, or seeking to recover its distribution from, the Debtor, the Estate, the Reorganized Debtor, or their property. After the second anniversary of the Effective Date, the Reorganized Debtor shall withdraw any amounts remaining in the unclaimed distribution reserve for distribution in accordance with this Plan.

**B.**    **Withholding and Reporting Requirements**

In connection with this Plan and all distributions hereunder, the Reorganized Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to those requirements. The Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with those withholding and reporting requirements.

**C.**    **Setoffs**

The Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made in respect of that Claim, claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Claim's holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or the Reorganized Debtor may have in connection with such Claim.

# ARTICLE XI
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party as of the Commencement Date.

# ARTICLE XII
# ACCEPTANCE OR REJECTION OF THE PLAN

**A.     Record Date**

Only the holders of Claims and Interests as of the Record Date, in the Classes entitled to vote on the Plan, shall be allowed to vote on the Plan. In addition, distributions to be made under the Plan shall be made only to the holders of Allowed Claims and Allowed Interests as of the Record Date.

**B.     Classes Entitled to Vote**

Only Claims in Class 2 as of the Record Date are entitled to vote to accept or reject the Plan. Holders of Interests in Classes 3 and 4 are deemed to have rejected the Plan. Claims in Class 1 are unimpaired, are deemed to have accepted the Plan and, therefore, holders of such Claims are not entitled to vote.

**C.     Acceptance by Impaired Classes**

An Impaired Class of Claims, Interests, or Warrants shall have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims, Allowed Interests, or Allowed Warrants actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims, Allowed Interests, or Allowed Warrants actually voting in the Class have voted to accept the Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

**D.     Cramdown**

The Debtor will request that the Bankruptcy Court confirm the Plan under the Bankruptcy Code and, accordingly, will seek cramdown of Classes 2, 3 and 4.

# ARTICLE XIII
# CONDITIONS PRECEDENT TO THE PLAN'S CONFIRMATION AND EFFECTIVE DATE

**A.     Conditions to Confirmation**

The Plan's Confirmation is subject to the satisfaction of each of the following conditions precedent:

i. The proposed Confirmation Order shall be in a form and substance satisfactory to the Debtor; and

ii. The Debtor shall have received the Net Sale Proceeds.

**B. Conditions to Effective Date**

Effectiveness of the Plan is subject to the satisfaction of each of the following conditions precedent:

i. Each of the conditions to entry of the Confirmation Order shall have been satisfied.

ii. The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, confirming the Plan, as the same may have been modified.

## ARTICLE XIV
## MODIFICATION; WITHDRAWAL

The Debtor reserves the right to modify the Plan either before or after Confirmation to the fullest extent permitted under section 1193 of the Bankruptcy Code and Bankruptcy Rule 3019. The Debtor may withdraw the Plan at any time before the Effective Date.

## ARTICLE XV
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and the Plan, to the fullest extent permitted by law, including jurisdiction to:

**A.** Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

**B.** Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

**C.** Hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

**D.** Issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

**E.** Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

**F.** Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

**G.** Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

**H.** Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and;

**I.** Enter a final decree closing the Chapter 11 Case.

## ARTICLE XVI
## EFFECTS OF CONFIRMATION

**A.** **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims, Interests, and Warrants, and their respective successors and assigns, and all other parties in interest in this Chapter 11 Case.

**B.** **Discharge of the Debtor**

Pursuant to section 1141(d) and section 1192 (if applicable) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, Warrants, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, Interests in, or Warrants relating to, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Interests, or Warrants, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a proof of claim or interest based upon such Claim, debt, right, Interest, or Warrant is filed or deemed filed pursuant

to section 501 of the Bankruptcy Code; (2) a Claim, Interest, or Warrant based upon such Claim, debt, right, Interest, or Warrant is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim, Interest, or Warrant has accepted the Plan.  Except as otherwise provided herein, any default by the Debtor with respect to any Claim, Interest, or Warrant that existed before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

**C.     Injunction**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, OR WARRANTS THAT HAVE BEEN DISCHARGED PURSUANT TO ARTICLE XI.B, RELEASED PURSUANT TO ARTICLE XI.D, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE XI.C, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR WARRANTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR WARRANTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR WARRANTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, OR WARRANTS RELEASED, SETTLED, OR DISCHARGED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS, INTERESTS, AND WARRANTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS, INTERESTS, AND WARRANTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY, OR ESTATE. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED ON THE EFFECTIVE DATE, AND THE INTERESTS AND WARRANTS WILL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED FROM AND AFTER THE EFFECTIVE DATE, AND ALL INTERESTS AND WARRANTS WILL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502 OF THE BANKRUPTCY CODE. ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY CLAIMS, INTERESTS, OR WARRANTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

**A.** **Payment of Statutory Fees**

All fees payable under section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid from funds otherwise available for distribution hereunder.

**B.** **Severability of Plan Provisions**

If, before Confirmation, the Bankruptcy Court holds that any provision of the Plan is invalid, void, or unenforceable, the Debtor, at its option, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

**C.** **Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

**D.** **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case, either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Reorganized

Debtor has made all distributions contemplated by this Plan and the Bankruptcy Court has entered an order closing the Chapter 11 Case.

**E.     Notices to Debtor**

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Counsel to the Debtor:**

Peter J. Haley
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
Boston, Massachusetts 02109

**F.     Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (i) the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof**.**

**LLADRO GALLERIES, INC.**

By:     */s/ Vincente Navarro*
Title:  Secretary

and by its attorneys,

*/s/ Peter J. Haley*
Peter J. Haley
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
Boston, Massachusetts 02109
Phone: (617) 217-4714
Fax: (617) 217-4750
peter.haley@nelsonmullins.com